## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ASMAE BOUAZZAOUI,**

    **Plaintiff,**       **Case No.:**

**v.**

**G4 AUTOWERKS LLC d/b/a**
**DIMMITT AUTOMOTIVE**
**GROUP,**

    **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ASMAE BOUAZZAOUI, by and through her undersigned counsel and sues the Defendant, G4 AUTOWERKS, LLC d/b/a DIMMITT AUTOMOTIVE GROUP (hereinafter referred to as "DIMMITT" or "Defendant") and states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(b).

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, ASMAE BOUAZZAOUI, is a resident of Hillsborough County, Florida.

4.      Defendant, DIMMITT, is a Florida Limited Liability Corporation authorized and doing business in this Judicial District.  At all times material, Defendant employed Plaintiff.  At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Florida Civil Rights Act, and 42 U.S.C. §1981.

5.      At all times material, Plaintiff was an employee of Defendant within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

6.      At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

7.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8.      Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9.      Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on November 5, 2019.

11.     On April 17, 2020, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination.  This Complaint has been filed within ninety (90) days

of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

12.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a Muslim female of Moroccan national origin and considered as a member of the Arab race.

14.     In or around February 2019, Plaintiff began her employment with Defendant working as an Internet Sales Representative at Defendant's Audi Wesley Chapel store.

15.     During Plaintiff's employment with Defendant, Plaintiff understood that she was performing her job well and on two different occasions, Plaintiff received the internet salesperson of the month bonus from Defendant.

16.     Plaintiff was hired by Joe Petrillo (General Manager), but Petrillo moved to another dealership by the time Plaintiff started working at Defendant's Audi Wesley Chapel store.

17.     When Plaintiff began working at Defendant's Audi Wesley Chapel store, Michael Cronk was the new General Manager and Brian Harrigan later became the Sales Manager on March 1, 2019.  During Plaintiff's interview with Cronk, he told Plaintiff that he did not want any drama and Plaintiff would be "gone" from the dealership if she ever went to Human Resources.

18.     Shortly after Plaintiff's employment began with Defendant, Cronk and Harrigan began sexually harassing Plaintiff on a repeated basis.

19.     On or about March 10, 2019, after walking by Harrigan, he said to Kim Nesselt (Director of Internet Sales): "she's got a rack on her."

20.     On or about March 25, 2019, during an Audi training in Atlanta, Georgia, Cronk stated to Plaintiff: "my friend said you're hot and I told him 'go up to her and talk to her.'"

21.     On or about April 15, 2019, Harrigan commented that Plaintiff's work shirt reminded him of his pillow cover, made comments about how Plaintiff's breasts looked in the shirt, stated that he liked Plaintiff's "big boobs," and further stated how Plaintiff's pants showed her "camel toe."

22.     On or about April 20, 2019, Harrigan saw that Plaintiff had her fingernails done and stated: "oh, the BT's."  Plaintiff asked Harrigan what he meant by that and he responded: "ball ticklers" and gestured what he meant with his hand.  Harrigan made these comments each time that Plaintiff had her nails done or approached the desk to work numbers.

23.     On or about May 7, 2019, Plaintiff came to work limping after injuring her back at the gym. Cronk and Harrigan began making jokes about how Plaintiff was walking and Harrigan asked: "what happened, did you fall off the pole at your night time job?"  After this, Cronk and Harrigan relentlessly make jokes and comments insinuating that Plaintiff was a stripper.  Examples of the almost daily comments made are:

    (a)     Harrigan stated: "if you don't sell cars and make money this month, you'll have to put in more work at night";

    (b)     Harrigan stated: "you look tired, did you have a long night at your night time job?";

(c)     When Plaintiff had a male customer negotiating with her, Cronk or Harrigan would say things like: "tell him if he buys the car, he'll get a lap dance";

(d)     Cronk noticed that Plaintiff had two cell phones.  He asked Plaintiff: "why do you need two phones, one for the other life?"  Plaintiff stated that she had one for her customers, to which Harrigan stated: "nighttime customers."

(e)     Harrigan asked Plaintiff to close one of the doors that has a long metal handle.  When Plaintiff grabbed the handle and was pulling it, Harrigan stated: "oh, you should be used to it . . . you slide on it every night"; and

(f)     Plaintiff was showing Cronk a trade picture that a client sent Plaintiff on her cell phone.  Plaintiff caught Cronk scrolling through her camera roll and tried to grab her phone from him.  Cronk pulled it away from Plaintiff and said: "let's see what kind of pictures you got on here." Harrigan then stated: "pictures of her on the pole?"

24.     In or around June 2019, Plaintiff had a customer in the showroom debating whether he wanted to trade his car and asking Plaintiff questions.  Harrigan stated: "go sit with him, lower your blouse a little bit, and show him the girls."

25.     On or about June 10, 2019, Plaintiff arrived at work for Defendant wearing new sunglasses.  Cronk asked Plaintiff if they were her "walk of shame" sunglasses.

26.     On or about June 15, 2019, Plaintiff heard Cronk and Harrigan whispering and walking closely behind her.  Plaintiff quickly turned around and caught them looking at her rear end.

27.     It was also common for sexual comments to be made in Plaintiff's presence. For example, Plaintiff's co-worker, Isa King, regularly talked about sex with Cronk and Harrigan.  King often went along with Cronk's and Harrigan's sexual comments and spoke about her own sex life in the workplace.  For example, on one occasion, Cronk said to King: "give us white guys a chance" and King replied that she likes "dark meat."  As a result of her

engagement in the sexual banter, King was treated more favorably than Plaintiff.  Cronk and Harrigan did not take issue with King calling in, leaving early on Saturdays, taking three-day weekends and taking long lunches.

28.     In addition to the sexual harassment that Plaintiff faced at Defendant, Plaintiff's supervisors also made repeated discriminatory comments about her religion, race, and national origin.  The comments include, but are not limited to:

(a)     On or about February 20, 2019, Cronk was making fun of Ed Kaffaf, a practicing Muslim, because Kaffaf went to the conference room to pray.

(b)     On one occasion, after Plaintiff went for a walk with Kaffaf and Moe (last name unknown), Cronk stated: "gotta watch you three."  All three employees are Muslim.

(c)     On or about March 30, 2019, Plaintiff was working with Indian customers and Harrigan referred to them as "your people."

(d)     Cronk and Harrigan also made comments about terrorism and explosives.  For example, Harrigan asked Plaintiff if she had C4 in her car.  Additionally, an Indian customer was asking about towing capacity and Cronk stated: "I don't know, is it enough for all the C4?"

(e)     When Plaintiff was working with a Muslim customer and talking about their trade-in, Harrigan said: "make sure there is no C4 in the trunk."

(f)     On another occasion, Cronk made a comment about explosives when Plaintiff closed a deal and said: "boom!"

(g)     On or about May 15, 2019, Plaintiff had her hands in the pocket of her jacket.  Harrigan said: "what are you holding under that jacket?  Open it, I don't trust you."  Cronk then stated that if Plaintiff opened her jacket, it might go "kaboom."

(h)     On or about June 10, 2019, Plaintiff was working with a Moroccan customer.  Cronk commented: "what are we doing, selling a car or planning to kaboom the place?"  Cronk also made fun of the spouses' headscarf.

29.     In addition to the religious and race-based comments, Defendant also refused to accommodate Plaintiff's sincerely held religious beliefs.  For example, during Ramadan (beginning May 5, 2019) Plaintiff was fasting due to her religious beliefs.  While Plaintiff was fasting and observing the most important religious month in the Muslim faith, Cronk made comments such as: "why does she need to fast since she's going to hell anyway?"

30.     Nesselt stated that Plaintiff would not have enough energy to perform her job while she was fasting and further stated that Plaintiff's fasting would "affect" her department.

31.     Ramadan ended at sundown on June 4, 2019. At the conclusion of Ramadan, there is a three-day celebration known as Eid al-Fitr, or the Festival of the Breaking of the Fast. Many consider this religious celebration the "Muslim version of Christmas."  On May 24, 2019, Plaintiff asked Nesselt for the day off to observe Eid al-Fitr.  Nesselt said: "I can't have you taking off, I have a department to run."  Nesselt told Plaintiff that she would have to take the day off as her day off for the week and not in addition to Plaintiff's weekly day off.  Plaintiff explained to Nesselt that the way that "Eid" is determined is based on the siting of the new moon that indicates the end of Ramadan and, therefore, Plaintiff would not know the exact day in which it would fall.  In response, Nesselt said: "you are telling me that you don't know what day you are asking for until that evening?  What kind of shit is this? That's the stupidest thing I've ever heard."  Plaintiff told Nesselt that she would take Eid al-Fitr off without pay and Nesselt finally agreed to accommodate Plaintiff.  After the conversation, Plaintiff sent Nesselt an internet article that explained Eid al-Fitr.

32.     On or about August 6, 2019, Plaintiff asked Cronk if she could have the day off on Saturday, August 10, 2019 to celebrate Eid al-Adha, a Muslim holiday.  Cronk immediately

denied Plaintiff's request.  However, as stated above, King was permitted to take Saturdays off
or leave early on Saturdays.

33.     On or about July 3, 2019, Plaintiff's pay sheet/washout was missing Plaintiff's
$500.00 salesperson of the month bonus.  Plaintiff brought the shortage to Cronk's attention
and he told Plaintiff that she did not receive it because her co-worker, Jimmy DeBone received
it.  Plaintiff explained that there are two bonuses, one for the sales floor and one for internet.
Cronk replied aggressively that he makes the decisions of who gets the bonuses.

34.     On or about August 6, 2019, Plaintiff told Cronk that her pay sheet/washout
was missing $630.00, the $500.00 bonus described above and $130.00 for a customer
appointment.  Cronk stated that he would take care of it, but it was not reflected on Plaintiff's
August 9, 2019 pay stub.  For the next several days, Cronk continued to give Plaintiff the
runaround and misrepresent that he was working on getting Plaintiff's pay.

35.     On August 15, 2019, Plaintiff spoke with Michelle (last name unknown, Human
Resources) about the unpaid wages.  Shortly thereafter, Plaintiff received an email from Cronk
stating that the "moolah" was on Plaintiff's desk.  Cronk left Plaintiff $630.00 in cash.

36.     Later that day, Kim Pizzuto (Human Resources Director) contacted Plaintiff
and wanted to know the "story" about the unpaid money.  Plaintiff explained everything to
Pizzuto and said that there was no need to order another check because Cronk paid her in cash.
Pizzuto was upset that Cronk paid Plaintiff in cash, raised her voice and demanded that Plaintiff
put Cronk on the phone.  After his conversation with Pizzuto, Cronk asked Plaintiff to return
the cash to him and confirmed that Plaintiff would receive a check the next day.

37.     On several occasions in late August 2019, Cronk insinuated that he was going to remove Plaintiff from the internet department.  When Plaintiff questioned Cronk about it, he told Plaintiff that she would "understand" when Plaintiff came in one morning and her leads were turned off.

38.     The same day, Plaintiff called Nesselt to find out if Cronk could remove her from the internet department.  Nesselt told Plaintiff that he could not because there was a process to do that and further told Plaintiff not to worry because she was doing a "great job."

39.     On several occasions, Cronk commented that Plaintiff had human resources on "speed dial." Cronk also called Plaintiff "Augi," the name of Plaintiff's former co-worker who went to human resources regarding a pay issue and was picked on for his accent and national origin and was terminated.  Cronk also called Plaintiff "Tyrell," who was one of Plaintiff's co-workers that was terminated.

40.     On or about August 25, 2019, Nesselt gave a duplicate lead to Plaintiff's co-worker, which negatively impacted Plaintiff's numbers.

41.     On or about August 26, 2019, Plaintiff was helping a customer and asked Cronk to assist. After Cronk spoke to the customer, he stated to Plaintiff: "I didn't get any buying signals, but I was wrong before.  I've made mistakes, hiring mistakes."  Cronk looked at Plaintiff and said: "right?"

42.     On or about August 30, 2019, Harrigan instructed Plaintiff to drive to Tallahassee, Florida to deliver a car to a customer, which is atypical.  Plaintiff explained that her back was injured and it would be difficult for her to drive that distance.  Harrigan told Plaintiff that he did not care what Plaintiff did, but if she wanted the deal, she had to drive the

car. Due to the hurricane traffic, it took Plaintiff a significant amount of time to drive roundtrip to Tallahassee.

43.    Due to the pain in her back, Plaintiff asked Cronk if she could go home early on August 31, 2019 and Cronk denied Plaintiff's request.

44.    On September 3, 2019, Plaintiff treated at urgent care due to her back pain and was ordered off of work for three (3) days.

45.    On September 6, 2019, Plaintiff returned to work and was called to a meeting with Nesselt.  Nesselt informed Plaintiff that she was on a final notice and probation for performance and that Plaintiff could not take any more leads until further notice. However, Plaintiff was not provided any documentation to review or sign.

46.    Plaintiff was shocked because she was never written-up or coached and Nesselt just recently told Plaintiff that she was doing a great job. Plaintiff asked Nesselt how she was supposed to sell cars without leads and Nesselt told Plaintiff that she could take a demotion to the sales floor.  Ultimately, Nesselt said that Plaintiff could have a maximum of 40 leads per month, which would significantly impact Plaintiff's ability to earn commissions and would cut Plaintiff's pay by approximately 50%.  Previously, Plaintiff's leads were approximately 80-90 per month.

47.    On September 23, 2019, Plaintiff met with Pizzuto to address her concerns in the workplace, ranging from sexual harassment and religious discrimination to having her leads reduced and Plaintiff's fear of approaching Human Resources.  Plaintiff told Pizzuto that Cronk and Harrigan made sexual comments to her and provided examples such as saying that Plaintiff "fell off a pole at [your] night time job" insinuating that Plaintiff was a stripper and

the continuous remarks about Plaintiff's "night time job."  Plaintiff also told Pizzuto that she was denied a request for a day off for a religious holiday and had her religious beliefs mocked when she asked for a day off for a religious holiday in June 2019. Furthermore, Plaintiff addressed her concern about having her leads reduced.

48.     On September 27, 2019, Pizzuto came to the dealership to allegedly conduct and investigation into Plaintiff's complaints.

49.     In or around early October 2019, Cronk told Plaintiff that he was changing Plaintiff's scheduled day off.  Plaintiff was the only person in the department to have her day off scheduled.  For the entirety of Plaintiff's employment with Defendant, she was scheduled off on Mondays.  After this change, Plaintiff's new off day was Thursday.

50.     On October 1, 2019, Pizzuto emailed Plaintiff to recap their conversation on September 23, 2019.  In her email, Pizzuto completely omitted any reference to Plaintiff's complaints of sexual harassment and religious discrimination.  Moreover, Pizzuto misstated and reworded many of the things that Plaintiff stated during their discussion.  Pizzuto finished her email by asking that Plaintiff let her know if she left out any points or misstated something.

51.     On October 3, 2019, Plaintiff emailed Pizzuto and addressed Pizzuto's email from October 1, 2019.  Specifically, Plaintiff informed Pizzuto that Pizzuto made multiple assertions that were misstated, reworded or omitted.  Plaintiff provided examples of the misstatements and rewording and further stressed Pizzuto's omissions regarding Plaintiff's complaints of sexual harassment and religious discrimination.  At the end of Plaintiff's email, she told Pizzuto that she would be happy to meet with Pizzuto and listen, but any further detail

from Plaintiff regarding her complaints would have to be in writing in order to avoid the manipulation that occurred after Plaintiff's initial conversation with Pizzuto.

52.     On the morning of October 8, 2019, Plaintiff met with Pizzuto and Natalie Ingham (Human Resources Representative).  Plaintiff reiterated that Pizzuto misstated and reworded important details of their conversation and completely omitted Plaintiff's complaints of sexual harassment and religious discrimination.  Pizzuto asked Plaintiff how many times sexual comments were made.  Plaintiff told Pizzuto that it happened "a lot."  Pizzuto pressed Plaintiff for a specific number, but Plaintiff stressed that she could not give a specific number because it happened frequently.  Pizzuto did not inquire any further.  Instead, Pizzuto said that she would like to set some time for Plaintiff, Nesselt, and Cronk to sit down and discuss Plaintiff's job performance.

53.     Later in the day, on October 8, 2019, Plaintiff's counsel sent a letter of representation to Defendant.  Like Plaintiff's prior complaints, the letter notified Defendant of the sexual harassment, religious discrimination, and retaliation that Plaintiff was facing. Despite the letter, no one from Defendant reached out to Plaintiff or her counsel to discuss Plaintiff's concerns.   Instead, Plaintiff received tension and looks from Defendant's management.  Plaintiff heard her co-workers, Carolyn Deary (Finance Manager) and Maria Hager (Internet Sales) make comments about Plaintiff's claims that she was discriminated against. In addition, Harrigan and Plaintiff's co-workers would not answer when Plaintiff spoke with them.

54.     On October 15, 2019, Plaintiff resigned from her position with Defendant. Plaintiff felt as though she had no other option and had to remove herself from the hostile environment.

## COUNT I
## TITLE VII—SEX HARASSMENT

55.     Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

56.     Plaintiff, a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

57.     The aforementioned actions by Michael Cronk and/or Brian Harrigan constitute unwelcome sex harassment.

58.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

59.     Defendant knew or should have known of the harassment of Plaintiff.

60.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of Title VII.

61.     The sex harassment and conduct of Michael Cronk and Brian Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

62.     Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

63.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

64.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

**COUNT II**
**FLORIDA CIVIL RIGHTS ACT—SEXUAL HARASSMENT**

65.     Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

66.     Plaintiff, a female, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

67.     The aforementioned actions by Michael Cronk and/or Brian Harrigan constitute unwelcome sex harassment.

68.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

69.     Defendant knew or should have known of the harassment of Plaintiff.

70.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of the Florida Civil Rights Act.

71.     The sex harassment and conduct of Michael Cronk and/or Brian Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

72.     Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

73.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

74.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

## COUNT III
## <u>TITLE VII - SEX DISCRIMINATION</u>

75.     Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

76.     Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII").

77.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by:

       (a)     denying Plaintiff time off;

       (b)     withholding Plaintiff's bonus;

       (c)     providing Plaintiff's leads to others;

       (d)     reducing Plaintiff's leads;

       (e)     changing Plaintiff's scheduled day off;

       (f)     disciplining Plaintiff; and

       (g)     constructively discharging Plaintiff's employment.

78.     Defendant's adverse employment actions toward Plaintiff were motivated by sex-based considerations.

79.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

80.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

81.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.  Back pay and benefits;

b.  Prejudgment interest on back pay and benefits;

c.  Front pay and benefits;

d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT - SEX DISCRIMINATION

82.  Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

83.  Plaintiff is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

84.  By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by:

(a)  denying Plaintiff time off;

(b)  withholding Plaintiff's bonus;

(c)  providing Plaintiff's leads to others;

(d)  reducing Plaintiff's leads;

(e)  changing Plaintiff's scheduled day off;

(f)     disciplining Plaintiff; and

(g)     constructively discharging Plaintiff's employment.

85.     Defendant's adverse employment decisions toward Plaintiff were motivated by sex-based considerations.

86.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

87.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

88.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

## COUNT V
## <u>TITLE VII-RELIGIOUS DISCRIMINATION</u>

89.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

90.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII")

91.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her religion, Muslim, by:

(a)    failing to accommodate Plaintiff's religious beliefs and or practices;

(b)    denying Plaintiff time off;

(c)    withholding Plaintiff's bonus;

(d)    providing Plaintiff's leads to others;

(e)    reducing Plaintiff's leads;

(f)    changing Plaintiff's scheduled day off;

(g)    disciplining Plaintiff; and

(h)    constructively discharging Plaintiff's employment.

92    Defendant's adverse employment acts toward Plaintiff were motivated by religious-based considerations.

93.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

94.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

95.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Punitive damages;

f.    Attorneys' fees and costs;

g.    Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

**COUNT VI**
**FLORIDA CIVIL RIGHTS ACT-RELIGIOUS DISCRIMINATION**

96.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

97.    Plaintiff is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

98.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her religion, Muslim, by:

(a)    failing to accommodate Plaintiff's religious beliefs and or practices;

(b)    denying Plaintiff time off;

(c)    withholding Plaintiff's bonus;

     (d)     providing Plaintiff's leads to others;

     (e)     reducing Plaintiff's leads;

     (f)     changing Plaintiff's scheduled day off;

     (g)     disciplining Plaintiff; and

     (h)     constructively discharging Plaintiff's employment.

99.    Defendant's adverse employment acts toward Plaintiff were motivated by religious-based considerations.

100.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

101.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

102.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

     a.     Back pay and benefits;

     b.     Prejudgment interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

     e.     Punitive damages;

     f.     Attorneys' fees and costs;

     g.     Injunctive relief; and

     h.     For any other relief this Court deems just and equitable.

## COUNT VII
## <u>TITLE VII—RELIGIOUS HARASSMENT</u>

103.     Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

104.     Plaintiff, a Muslim, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII").

105.     The aforementioned actions by Cronk, Nesselt, and Harrigan constitute unwelcome religious-based harassment.

106.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

107.     Defendant knew or should have known of the harassment of Plaintiff.

108.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of religion, in violation of Title VII.

109.     The religious harassment and conduct of Cronk, Nesselt, and Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

110.     Defendant's actions were intentional and encouraged an environment where degradation based on religion was common and tolerated.

111.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

112.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

## COUNT VIII
## FLORIDA CIVIL RIGHTS ACT—RELIGIOUS HARASSMENT

113.   Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

114.   Plaintiff, a Muslim, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

115.   The aforementioned actions by Cronk, Nesselt and/or Harrigan constitute unwelcome religious-based harassment.

116.   The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

117.   Defendant knew or should have known of the harassment of Plaintiff.

118.   The aforementioned actions created a hostile environment and constitute discrimination on the basis of religion, in violation of the Florida Civil Rights Act.

119.   The religious harassment and conduct of Cronk, Nesselt and/or Brian Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

120.    Defendant's actions were intentional and encouraged an environment where degradation based on religion was common and tolerated.

121.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

122.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Punitive damages;

    f.    Attorneys' fees and costs;

    g.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

## COUNT IX
## 42 U.S.C. §1981 DISCRIMINATION

123.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

124.    Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

125.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her race—including, but not limited to her ancestry and ethnic characteristics—by:

(a)    denying Plaintiff time off;

(b)    withholding Plaintiff's bonus;

(c)    providing Plaintiff's leads to others;

(d)    reducing Plaintiff's leads;

(e)    changing Plaintiff's scheduled day off;

(f)    disciplining Plaintiff; and

(g)    constructively discharging Plaintiff's employment.

126.    Defendant's adverse employment acts toward Plaintiff were motivated by race-based considerations.

127.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

128.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

129.    Defendant knew or should have known of the discrimination.

130.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering,

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief;

h.      For any other relief this Court deems just and equitable.

**COUNT X**
**TITLE VII – RACE/NATIONAL ORIGIN DISCRIMINATION**

131.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

132.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").  Specifically, Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

133.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her race/national origin—including, but not limited to her ancestry and ethnic characteristics—by:

(a)    denying Plaintiff time off;

(b)    withholding Plaintiff's bonus;

(c)    providing Plaintiff's leads to others;

(d)    reducing Plaintiff's leads;

(e)    changing Plaintiff's scheduled day off;

(f)    disciplining Plaintiff; and

(g)    constructively discharging Plaintiff's employment.

134.   Defendant's adverse employment acts toward Plaintiff were motivated by race/national origin-based considerations.

135.   Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

136.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

137.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.     Back pay and benefits;

    b.     Interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Compensatory damages for emotional pain and suffering,

    e.     Punitive damages;

    f.     Attorneys' fees and costs;

    g.     Injunctive relief;

    h.     For any other relief this Court deems just and equitable.

### COUNT XI
### FLORIDA CIVIL RIGHTS ACT – RACE/NATIONAL ORIGIN DISCRIMINATION

138.   Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

139.    Plaintiff is a member of a protected class under Florida Civil Rights Act. Specifically, Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

140.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her race/national origin—including, but not limited to her ancestry and ethnic characteristics—by:

      (a)    denying Plaintiff time off;

      (b)    withholding Plaintiff's bonus;

      (c)    providing Plaintiff's leads to others;

      (d)    reducing Plaintiff's leads;

      (e)    changing Plaintiff's scheduled day off;

      (f)    disciplining Plaintiff; and

      (g)    constructively discharging Plaintiff's employment.

141.    Defendant's adverse employment acts toward Plaintiff were motivated by race-based considerations.

142.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

143.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

144.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering,

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief;

h.     For any other relief this Court deems just and equitable.

**COUNT XII**
**42 U.S.C. §1981—HARASSMENT**

145.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

146.    Plaintiff is a member of a protected class under 42 U.S.C. §1981.  Specifically, Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

147.    The aforementioned actions by Cronk and/or Harrigan constitute unwelcome race/national origin harassment.

148.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

149.    Defendant knew or should have known of the harassment of Plaintiff.

150.    The aforementioned actions created a hostile environment and constitute discrimination on the basis of race/national origin, in violation of 42 U.S.C. §1981.

151.    The race/national origin harassment and conduct of Cronk and/or Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

152.    Defendant's actions were intentional and encouraged an environment where degradation based on race/national origin was common and tolerated.

153.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

154.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Punitive damages;

    f.    Attorneys' fees and costs;

    g.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

## COUNT XIII
## TITLE VII—RACE/NATIONAL ORIGIN HARASSMENT

155.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

156.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").   Specifically, Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

157.    The aforementioned actions by Cronk and/or Harrigan constitute unwelcome race/national origin-based harassment.

158.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

159.    Defendant knew or should have known of the harassment of Plaintiff.

160.    The aforementioned actions created a hostile environment and constitute discrimination on the basis of race/national origin in violation of Title VII.

161.    The racial/national origin harassment and conduct of Cronk and/or Harrigan created a hostile work environment which interfered with Plaintiff's ability to perform her job.

162.    Defendant's actions were intentional and encouraged an environment where degradation based on race/national origin was common and tolerated.

163.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

164.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

        a.      Back pay and benefits;

        b.      Prejudgment interest on back pay and benefits;

        c.      Front pay and benefits;

        d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

        e.      Attorneys' fees and costs;

        f.      Injunctive relief; and

g.      For any other relief this Court deems just and equitable.

## COUNT XIV
## FLORIDA CIVIL RIGHTS ACT—RACE/NATIONAL ORIGIN HARASSMENT

165.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

166.    Plaintiff is a member of a protected class under the Florida Civil Rights Act (FCRA), Chapter 760, *Florida Statutes*.  Specifically, Plaintiff is a Muslim of Moroccan decent and considered as a member of the Arab race.

167.    The aforementioned actions by Cronk and/or Harrigan constitute unwelcome race/national origin-based harassment.

168.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

169.    Defendant knew or should have known of the harassment of Plaintiff.

170.    The aforementioned actions created a hostile environment and constitute discrimination on the basis of race/national origin in violation of the FCRA.

171.    The racial/national origin harassment and conduct of Cronk and/or Harrigan created a hostile environment which interfered with Plaintiff's ability to perform her job.

172.    Defendant's actions were intentional and encouraged an environment where degradation based on race/national origin was common and tolerated.

173.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

174.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

    d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.      Attorneys' fees and costs;

    f.      Injunctive relief; and

    g.      For any other relief this Court deems just and equitable.

### COUNT XV
### <u>AMERICANS WITH DISABILITIES ACT – DISCRIMINATION</u>

175.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

176.    Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq.*

177.    Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

178.    Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.  Specifically, Plaintiff's back condition substantially limited one or more major life activities including, but not limited to: standing, walking, sitting, bending, and lifting.

179.    Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

180.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant:

      (a)    denied Plaintiff a reasonable accommodation for her disability;

      (b)    denied Plaintiff time off;

      (c)    disciplined Plaintiff;

      (d)    reduced Plaintiff's lead; and

      (e)    constructively discharging Plaintiff's employment.

181.    The above described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

182.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

183.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

184.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.        Back pay and benefits;

      b.        Prejudgment interest on back pay and benefits;

      c.        Front pay and benefits;

      d.        Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.        Punitive damages;

      f.        Attorneys' fees and costs;

      g.        Injunctive relief; and

      h.        For any other relief this Court deems just and equitable.

**COUNT XVI**
**<u>FLORIDA CIVIL RIGHTS ACT – DISABILITY/HANDICAP DISCRIMINATION</u>**

185.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

186.    Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, Chapter 760, *Florida Statutes*.

187.    Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

188.    Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's back condition substantially limited one or more major life activities including, but not limited to: standing, walking, sitting, bending, and lifting.

189.    Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

190.    By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.   Specifically, Defendant:

        (a)    denied Plaintiff a reasonable accommodation for her disability;

        (b)    denied Plaintiff time off;

        (c)    disciplined Plaintiff;

        (d)    reduced Plaintiff's leads; and

        (e)    constructively discharging Plaintiff's employment.

191.    The above described acts of disability discrimination constitute a violation of the Florida Civil Rights Act, for which Defendant is liable.

192.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

193.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

194.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

        a.    Back pay and benefits;

        b.    Prejudgment interest on back pay and benefits;

        c.    Front pay and benefits;

d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

**COUNT XVII**
**42 U.S.C. §1981 – RETALIATION**

195.  Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

196.  Plaintiff suffered adverse employment actions for engaging in protected activity under the 42 U.S.C. §1981.  Specifically, Plaintiff, individually and through her counsel, made good-faith, reasonable complaints of discrimination based on her race and was (1) harassed, (2) had her day off changed, and (3) was constructively discharged by Defendant.

197.  The aforementioned actions by Defendant constitute retaliation by Defendant in violation of 42 U.S.C. §1981.

198.  Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

199.  Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

200.  As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

## COUNT XVIII
## TITLE VII – RETALIATION

201.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

202.    Plaintiff engaged in protected activity by opposing an employment practices made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). Specifically, Plaintiff opposed sexual harassment, racial/national origin discrimination, religious discrimination, and retaliation by making good-faith complaints to Defendant, both individually and through her counsel.

203.    In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when she was (1) harassed, (2) had her day off changed, and (3) was constructively discharged by Defendant.

204.    Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendant is causally connected to her opposition and resistance of sex harassment, race/national origin discrimination, religious discrimination, and retaliation.

205.    The aforementioned actions by Defendant constitute retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

206.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

207.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Punitive damages;

f.    Attorneys' fees and costs;

g.    Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

### COUNT XIX
### FLORIDA CIVIL RIGHTS ACT—RETALIATION

208.    Plaintiff, ASMAE BOUAZZAOUI, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-four (54).

209.   Plaintiff engaged in protected activity by opposing an employment practice made unlawful by the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Specifically, Plaintiff opposed sexual harassment, racial/national origin discrimination, religious discrimination, and retaliation by making good-faith complaints to Defendant, both individually and through her counsel.

210.   In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when she was (1) harassed, (2) had her day off changed, and (3) was constructively discharged by Defendant.

211.   Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendant is causally connected to her opposition and resistance of sex harassment, race/national origin discrimination, religious discrimination, and retaliation.

212.   The aforementioned actions by Defendant constitute retaliation by Defendant in violation of the Florida Civil Rights Act.

213.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

214.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

215.    Plaintiff, ASMAE BOUAZZAOUI, demands a trial by jury on all issues so triable.

        **DATED** this 7th day of July 2020.

                                        **FLORIN GRAY BOUZAS OWENS, LLC**

                                        */s/ Gregory A. Owens*_____
                                        **GREGORY A. OWENS, ESQUIRE**
                                        Florida Bar No.: 51366
                                        greg@fgbolaw.com
                                        **WOLFGANG M. FLORIN, ESQUIRE**
                                        Florida Bar No.: 907804
                                        wolfgang@fgbolaw.com
                                        16524 Pointe Village Drive
                                        Suite 100
                                        Lutz, Florida 33558
                                        (727) 254-5255
                                        (727) 483-7942 (fax)
                                        *Trial Attorneys for Plaintiff*